Per Curiam.

Considering the case of Fannie Spaulding, the petition contains four specifications of negligence, the first and third of which were disposed of by the holding of the Court of Appeals that plaintiff’s case rested on the second and fourth specifications. Those refer to the operator of the bus. The second specification is that “he neglected to give a signal to turn left in sufficient time to give ample warning of other users of the highway who would be affected by such movement.” The fourth specification, added during the trial, is in substance, as stated by the trial court in its charge, that “the operator failed to yield the right of way.”
Summarizing the situation, the facts disclose that the defendant’s bus was stopped at the southwest corner of the intersection of Wayne Avenue and Fifth Street so as to make a left-hand turn through the intersection to go northbound on Wayne Avenue. Plaintiff was waitiflg for the same traffic signal, to cross from the northeast corner of the intersection westerly on the crosswalk to the northwest corner.
Four witnesses were presented, two of whom were employed at a filling station located approximately 125 feet back from the northeast corner. They did not witness the incident until after plaintiff’s fail. Their first observations were when plaintiff was on the ground being assisted to her feet by the *157 bus operator. Their testimony ran chiefly to the location of the bus when they first observed it. The third witness, a truck driver, westbound on Fifth at the northeast corner of the intersection testified:
“Q. And then tell us what happened? A. The traffic started to move and the trolley pulled up into the center of the intersection, and I motioned for him to go ahead and make his left turn. At that time Mrs. Spaulding walked off the curb and she got out, I would say close to the center line, when the bus driver stopped, and his front end was about — well, it was blocking the westbound traffic, and about the same time Mrs. Spaulding ran backward and fell.
ii# # *
“Q. What then did you do? A. I got out of the truck and went over to help pick her up, me and the driver of the City Railway bus.”
On reeross-examination, this witness testified:
“Q. How fast was the bus going? A. I would say approximately one mile an hour, he just started moving. You mean from the point where he stopped in the center?
“Q. Yes. Where he stopped at the center until he pulled over and stopped at the crosswalk? A. He just started out.”
The plaintiff testified that the accident occurred at about 5 p. m. in the afternoon of February 12, 1954, Her major injury was a broken arm. Excerpts from her testimony follow:
“Q. What happened when the light turned green for you to cross Wayne Avenue? A. I started to cross the street, and when I started across I got about three feet away from the sidewalk, and the bus came up around, it was going east, and it turned on Wayne Avenue; 1 thought it was going to hit me, and I went backward to keep it from hitting me, and when I went backward 1 fell.
II # # *
“Q. How far was the bus from you in its turn — now let me finish mv question — when you say it scared you? A. It was right close to me, I remember that, and I got scared and started to go backwards.
“Q. Can you give us any estimate of how close it was to you? A. Well, I was scared so 1 thought it was right close to me.
*158 i t # • #
“Q. Can you give us auy estimate at all, Mrs. Spaulding, of the distance between you and the bus when it scared you? A. I would say just about as close to where that man is sitting there in that chair.”
This distance was agreed upon as approximately five feet. It may be noted that there is nothing in the record relating to scare or fright proceeding counsel’s question quoted above, “when you say it scared you.”
On cross-examination, plaintiff testified:
“Q. When you were up on the curb you saw the bus on Fifth Street? Á. Yes, sir.
“Q. Standing still? A. Yes, sir.
i i # * *
“Q. Did you see the bus start up? A. It was going but I thought it was going on Fifth Street.”
The petition alleges that the bus was being driven “over a regularly franchised route.”
As to the allegations of negligence of the operator in not giving a signal of his intention to turn and in failure to yield the right of way, counsel for plaintiff contended at the trial that “the testimony is that there was no light signal, no audible horn.” Examination of the record shows that plaintiff gave no testimony on these points and the truck driver, the only other witness who saw the occurrence, testified on cross-examination :
“Q. Remember seeing the flasher light on the bus as it was turning there? A. No, sir, I don’t.
“Q. You don’t know whether it was on or not? A. No, sir. ’ ’
On redirect examination, he testified:
“Q. Recall hearing any horn signal? A. No, sir.
“Q. Or seeing any kind of signal made by the operator of the bus? A. No, sir, I don’t remember any signals.” (Emphasis supplied.)
In order to raise a jury question there must he some evidénce in the record on which an.inference may be drawn. We can find no such evidence here. The bus, traveling at one mile an hour, was stopped five feet away from the plaintiff when she turned and fell.
*159 Section 4511.39, Revised Code, provides, in part, as follows:
“No person shall turn a vehicle or trackless trolley from a direct course upon a highway until such person has exercised due care to ascertain that the movement can be made with reasonable safety to other users of the highway, and then only •after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement, or after giving an appropriate signal in the event any traffic may be affected by such movement.
‘ ‘ A signal ol intention to turn, right or left shall be given in sufficient time in advance of the movement indicated to give ample warning to other users of the highway who would be affected by such movement.”
This section was under consideration in the case of Eisenhuth v. Moneyhon, 161 Ohio St., 367, 119 N. E. (2d), 440. In the third paragraph of the syllabus it was held :
‘ ‘ Where there exists a legislative enactment commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment solely by one whose duty it is to obey it, such violation constitutes negligence per se; but where there exists a legislative enactment expressing for the safety of others, in general or abstract terms, a rule of conduct, negligence per se has no application and liability must be determined by the application of the test of due care as exercised by a reasonably prudent person under the circumstances of the case. ’ ’
We fail to see any evidence that the driver of the bus failed to give a signal of his intention to make a left turn, visual or audible, and as to the point where the bus stopped the only evidence before the trial court was that given by the gas station attendants who first observed it stopped after the occurrence. Concededly, it was five feet from plaintiff when she turned and fell.
Finding no jury question raised on the evidence in these cases, we must, therefore, reverse the judgments of the Court of Appeals and affirm the judgments of the trial court. .

Judgments reversed.

*160 Weygandt, C. J., Zimmerman, Herbert and Peck, JJ., concur.
Taft, J., concurs in the judgment.
Matthias and Bell, J J., dissent.